**E-FILED**
Wednesday, 19 July, 2006  04:09:10 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ROBERT SCOTT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No.  03-3265 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter is before the Court on Petitioner Robert Scott's Motion to Vacate, Correct, or Set Aside his conviction and sentence pursuant to 28 U.S.C. § 2255 (d/e 1) (Petition).  On April 13, 2000, a jury found Scott guilty of conspiracy to possess with intent to distribute and distribution of narcotics, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B)(vii).  On September 25, 2000, the Court sentenced Scott to 326 months imprisonment.  United States v. Scott, 116 F.Supp.2d 987 (C.D.Ill. 2000).  The Seventh Circuit affirmed.  United States v. Scott, 284 F.3d 758 (7th Cir. 2002).  Scott now raises twenty-two grounds to set aside his conviction and sentence.  For the reasons set forth below, the Court determines that an

evidentiary hearing should be held with respect to Scott's claim of ineffective assistance of appellate counsel for raising on direct appeal the issue of ineffective assistance of trial counsel.  The remaining claims lack merit and are dismissed.

## STATEMENT OF FACTS

On June 11, 1999, Scott was indicted.  Indictment in Case No. 99-30043 (Indictment) filed in this matter collectively with the criminal docket (Criminal Docket) (d/e 3).  Scott's first trial commenced on November 29, 1999.  Scott was represented by attorneys Frank Schweitzer and Greg Grigsby.  Scott had a possible conflict of interest with Grigsby because Grigsby had previously prosecuted Scott in certain earlier unrelated state court proceedings.  Scott, however, waived any conflict before the trial commenced.  Criminal Docket, Minute entry entered November 22, 1999.

During Scott's first trial, the Government was represented by Assistant United States Attorney Timothy Bass.  Bass introduced, among other things, motel and telephone records, and drugs seized from co-conspirators Shawn Jones and Tim Burnett.  Transcripts of Proceedings of First Trial in Case No. 99-30043 (criminal docket entry nos. 139, 148-54) (1Tr), 1009-12, 1078-86, 517-75, 82-86, 1153-1208.  The Court hereby makes all of

the transcripts of proceedings in Case No. 99-30043 part of the record in this case.  Scott testified at the first trial.  He denied any involvement in any conspiracy to distribute any drugs.  <u>1Tr.</u> at 1433-58.  Scott also presented other witnesses to support his version of events.  On December 15, 1999, the Court ordered a mistrial after the jury announced that it was unable to reach a unanimous verdict.  <u>Criminal Docket, Minute entry dated December 15, 1999</u>.

After the first trial, both of Scott's attorneys withdrew, and Scott retained attorney Michael Metnick to represent him at the retrial.  Bass again represented the Government at the second trial.  Co-conspirator Shawn Jones had refused to testify at the first trial and continued to refuse to testify.  Bass filed a motion to admit Jones' grand jury testimony at the second trial on the grounds that Scott had caused Jones to be unavailable to testify.  Bass argued that Scott had bribed or coerced Jones not to testify.  Bass argued that Scott had wrongfully contributed to Jones' unavailability and, thus, Jones' grand jury testimony was admissible.  <u>Fed. R. Evid.</u> 804(b)(6).  Bass further argued that Scott gave up his Sixth Amendment confrontation right with respect to Jones' testimony because Scott wrongfully procured Jones' refusal to testify.

3

The jury for the second trial was selected on Tuesday, March 28, 2000. On Monday, April 3, 2000, the Court held a hearing outside the presence of the jury in which the Court granted Jones immunity in order to testify. Jones again refused to testify. The Court found Jones to be in contempt. The Court further heard evidence outside the presence of the jury regarding Bass' motion to admit Jones' grand jury testimony. At the end of the hearing, the Court allowed the Government's motion. The Court ruled that Scott had waived his right of confrontation as to Jones' testimony due to his involvement in Jones' refusal to testify. The Court also determined that Scott had wrongfully contributed to Jones' unavailability to testify. Order entered April 4, 2000 (criminal docket entry 207). See Fed. R. Evid. 804(b)(6). The Court hereby makes the April 4, 2000, Order a part of the record in this case. The trial began on April 3, 2000, after the hearing.

On Tuesday, April 4, 2000, the Court informed the parties outside of the presence of the jury that a juror had to be excused because the juror's father was going to be admitted to the hospital for a cardiac procedure. Transcripts of Proceedings of Second Trial (criminal docket entry nos. 211, 222, 264-71) (2Tr.) at 438. Metnick told the Court, "And I will inform the

Court that I believe my mother is going to have a valve replacement on Monday of this week." <u>2Tr.</u> at 439.  The Court asked if Metnick meant the following Monday.  Metnick responded, "She was informed last Friday that she's going to have to have one in two weeks and I believe--I'll know today . . . ." <u>Id.</u>  At the end of the day, again outside the presence of the jury, the Court and counsel discussed scheduling.  The Court originally had not intended to conduct the trial on Fridays, but now inquired of the parties if their schedules would permit holding trial on two Fridays, April 7 and 14, 2000.  <u>Id.</u> at 501.  Metnick responded to the Court's inquiry, "I think the 14th--yeah, one of the things I just mentioned, the thing with my mother, and I wanted to finish the case also."  <u>Id.</u>

Bass again sought to introduce, at the second trial, motel and telephone records, and drugs (quantities and type), that had been admitted at the first trial.  Attorney Metnick indicated to the Court that he had agreed to stipulate to the records and drug quantities and quality, as a matter of trial strategy.  Scott objected to stipulating to their admission. <u>2Tr.</u> at 1105-07.  Bass stated that if there was no stipulation, the Government would ask the Court to admit the evidence based on the foundation testimony submitted at the first trial.  <u>Id.</u> at 1107.  Scott

complained, but the Court told Scott that his counsel had the authority to make this decision, and Scott had to abide by that decision. Id. at 1108-14. The evidence was admitted by stipulation.

The trial continued. At the end of the day on Monday, April 10, 2000, the Court again discussed scheduling with counsel outside the presence of the jury:

> MR. METNICK: And the other is just to inform the Court that I think that we're all confident that the Government's going to conclude its case tomorrow and the defendants will be able to put on its case.

> THE COURT: Good. What does that give us by way of projection on our time?

> MR. METNICK: Judge, Mr. Bass and I have discussed, and I think that the case will get to the jury on Thursday. And I am going to ask the Court that if we finish at some time Wednesday, it's not that--if there's still time in the day if we can recess and call the jury back for Thursday. Wednesday's the day of my mother's surgery and I know I want to be in contact with --

> THE COURT: I would rather not break into the closings in any event, if we can avoid that.

2Tr. at 1251-52. Bass rested the Government's case on Tuesday, April 11, 2000, and Metnick began presenting the defense. At the end of the day, Metnick again asked if the case could go to the jury on Thursday. Metnick

told the Court, "I know for a fact our case will not last until the end of the day tomorrow."  2Tr. at 1498-99.  The Court and Bass agreed that the parties would argue the case on Thursday.  Id.

Scott did not testify in his own defense at this trial.  The Court had an extensive colloquy with Scott outside the presence of the jury at the end of the day on Wednesday, April 12, 2000, concerning his decision not to testify.  2Tr. at 1637-54.  The Court repeatedly informed Scott that he had the absolute right to decide whether to testify.  Scott said on numerous occasions during the colloquy that he had been required to follow his attorneys' instructions.  Toward the end of the colloquy, Metnick interjected:

> MR. METNICK: Judge, I shouldn't interject, but he's playing games with you right now, and he's absolutely playing games with you right now, and it's obvious he's playing games with you right now, and we're ready to proceed as we have been proceeding.  And I'm telling you that's what I see right now and I think there's enough for the Court to make a finding that that's what's going on, and to let's just proceed without him testifying as it is going.
>
> I mean I'm just sitting here listening to this colloquy, and I realize he's my client, but I'm also saying this for his good.  We're ready to argue this case tomorrow and we're ready to win this case tomorrow, and hopefully that will be the last you'll see of Robert Scott and that will be the last he'll see of you.

But I could just see us going through this again another 30 minutes, you know, tomorrow with the courtroom full of people and so forth.

2Tr. at 1651-52.  The colloquy finally ended shortly thereafter:

THE COURT: One final time.  Mr. Scott, was the decision not to testify ultimately your decision that you made and you did not testify?

MR. SCOTT: The decision was--had to be ultimately mine I guess, Your Honor.  I don't mean to cause the Court any problems, Your Honor.  I don't know what my legal rights are.

THE COURT: Based upon the prior admonition in the first trial and based upon everything that is now on the record and what has been stated by all of counsel and acknowledged by Mr. Scott, the Court finds that he did make the decision as a personal one ultimately with the advice of counsel not to testify in this case.

2Tr. at 1653-54.  Counsel argued on Thursday, April 14, 2006.  The jury found Scott guilty.

During the trial, attorney Metnick displayed physical difficulties.  His speech was slurred on occasion.  He stumbled.  His throat became dry.  He lost his train of thought on occasion.  See 2Tr. at 1252, 1473.  By the end of the trial, Metnick started wearing an eye patch over one eye.  After the trial, Metnick was diagnosed as having Multiple Sclerosis.

Scott dismissed Metnick after the trial and hired Grigsby again to

represent him at sentencing.  At sentencing, Scott objected to the Court making any factual findings regarding the type or quantity of drugs that he distributed.  Scott argued that under Apprendi v. New Jersey, the jury had to make these findings beyond a reasonable doubt.  Apprendi, 530 U.S. 466 (2000).  The Apprendi decision was handed down after the trial, but before the sentencing hearing.  Under Apprendi, any fact which would increase the statutory maximum penalty that a defendant faces (other than a proof of a prior conviction) must be alleged in the Indictment and proven to a jury beyond a reasonable doubt.  Apprendi, 530 U.S. at 490.  The maximum sentence for conspiracy to distribute an undetermined amount of marijuana in this case was 10 years.  21 U.S.C. § 841(b)(1)(D); see Scott, 116 F.Supp.2d at 989.  The maximum sentence for conspiracy to distribute an undetermined amount of cocaine was 30 years because the Defendant had a prior felony drug conviction.  21 U.S.C. § 841(b)(1)(B).  The jury found Scott guilty, but did not make any determinations as to whether he conspired to sell marijuana or cocaine, or both, or the quantity of either drug involved.  Thus, Grigsby argued that the 10 year statutory maximum for marijuana must be applied in this case because the jury made no finding that Scott conspired to distribute cocaine and made no findings as to the

quantity of drugs involved.

The Court agreed that the jury should have determined beyond a reasonable doubt the type of drugs, but found that the error was harmless in this case. United States v. Scott, 116 F.Supp.2d at 990. The Court found that any rational juror would find beyond a reasonable doubt that the conspiracy involved at least some distribution of cocaine. Id. at 990-91. The Court, however, agreed that it could make no finding as to the quantity of cocaine. As a result, the Court determined that the maximum sentence was 30 years since Scott had a prior drug conviction. Id. at 990.

Scott also objected to the calculation of the quantity of drugs for which he was held accountable. He argued that some statements by co-conspirators were contradicted by previous statements. The Court overruled the objection and found that the evidence supported the calculation that held Scott accountable for the equivalent of 2,500.18  kilograms of marijuana. Id. at 992.

Scott's counsel did not object to the convictions on which his criminal history calculations were based. Scott now claims that he was not represented by counsel in several of those state convictions. He did not raise this point at the sentencing hearing. The Presentence Investigation

Report (PSR) stated that he was represented by counsel in those cases. Presentence Investigation Report, (criminal docket entry 243), ¶¶ 34-50. The Court makes the PSR a part of the record in this case. Based on the PSR, the Court determined that Scott had 15 criminal history points, placing him in Criminal History Category VI. U.S. v. Scott, 116 F.Supp.2d at 994. The Court determined that the sentencing range was 262 to 327 months. The Court sentenced Scott to 326 months imprisonment. Id. at 995.

Scott appealed his conviction and sentence. Attorney Sean Nash represented Scott on the appeal. Nash raised the following issues on appeal:

1.    Was the evidence sufficient to prove Scott guilty of conspiracy to distribute both marijuana and cocaine?

2.    Did the district court violate Scott's Due Process rights by failing to properly instruct the jury on a buyer-seller relationship and multiple conspiracies?

3.    Did the district court violate Scott's Due Process rights by instructing the jury that it could convict Scott as charged if it found that Scott conspired to distribute marijuana or cocaine?

4.    Did the district court violate Scott's Due Process rights by erroneously admitting the grand jury testimony of co-conspirator Shawn Jones?

5.    Was Scott's (sic) deprived of his Sixth Amendment right

to effective assistance of counsel?

Government's Response to Petitioner's Motion Pursuant to 28 U.S.C. §
2255 (d/e 22) (Government Response), Attached exhibit, Brief of
Defendant-Appellant Robert Scott (Scott Appellate Brief) at 1.

The opening paragraph of Scott's argument regarding ineffective
assistance of counsel stated:

> Scott received ineffective assistance of counsel in this case.
> It is undisputed that Scott had serious issues with his trial
> attorney.  Mr. Metnick made serious errors on the record that
> had the cumulative effect of denying Scott his Sixth
> Amendment right to effective assistance of counsel.

Scott Appellate Brief at 16-17.

During the oral argument, a Court of Appeals judge and Nash had the
following colloquy:

> Judge 2:   Mr. Nash, do you really want to pursue an
> ineffective assistance claim now?  Let me tell you the
> problem.  It's almost impossible to succeed on an
> ineffective assistance on direct appeal because the
> court has to indulge the presumption that the
> attorney was doing what he was doing for some
> reason.  You can't tell whether the attorney had a
> reason without an evidentiary hearing.  We haven't
> had an evidentiary hearing.  So one can't succeed on
> this claim on direct appeal.  But, if you raise it now
> you won't be able to raise it later in the 2255 action
> after an evidentiary hearing because you get only
> one shot.  So is this something your client really

wants to raise now?

Nash:       I have spoken with my client about this matter and
            this is, he wants to raise it now.

Judge 2:    He knows this is a no-win proposition?

Nash:       He knows that's a no-win proposition essentially, yes
            he does.  He knows that it's a very high threshold to
            try to overcome.

Judge 2:    A very high threshold?  As I sometimes try to remind
            counsel, this court has been in business for a
            hundred and ten years.  The number of ineffective
            assistance claims made on direct appeal that have
            succeeded in that period is zero.

Nash:       I appreciate the statistic but it doesn't make me feel
            very good this morning, but at the same time that I
            . . .

Judge 2:    The basis of my question is whether it is really in
            your client's interests to raise this now, now if your
            client knows these risks and wants to proceed . . .

Nash:       I've, I've, I've gone over the risks with my client to
            the best of my ability, I've stated exactly what you
            stated to me and he wants to pursue this.

Judge 2:    Ok.

Petition, Addendum, Exhibit M, Transcript of Oral Argument held

December 6, 2001 at 2.

    Scott states in his Declaration submitted in support of his Petition:

> That I told Mr. Nash that I wanted the trial ineffective assistance of counsel claim raised on direct appeal. However, Mr. nash (sic) did not inform me that the claim was meritless, if raised on direct appeal. Mr. Nash never informed me that since no evidentiary hearing was held on the ineffective claim, it was doomed in the appellate court. Also, Mr. Nash never informed me that the Seventh Circuit has never had a successful ineffective claim, that was raised on direct appeal.

Petition, Addendum, Exhibit L, Declaration of Robert Scott, ¶ 17.

The Seventh Circuit then affirmed the conviction. The Court of Appeals summarily rejected the issues raised on appeal except the admission of the Jones' grand jury testimony. U.S. v. Scott, 284 F.3d at 761-65. The Court found that the decision to allow the testimony did not violate Federal Rule of Evidence 804(b)(6). The Court of Appeals found that the evidence presented at the evidentiary hearing supported the trial court's finding that Scott wrongfully procured Johnson's refusal to testify, and so his unavailability at trial. Id. at 764-65. The Court noted that Scott did not raise the Sixth Amendment confrontation clause as a separate issue. Id. at 762.

Scott now raises twenty-two claims to set aside his conviction and sentence. In order to receive an evidentiary hearing on his claims, Scott must present actual proof of the allegations. Galbraith v. United States,

313 F.3d 1001, 1009 (7th Cir. 2002).  <u>See</u> <u>Section 2255 Rule 8(a)</u>.  Scott fails to meet this burden with respect to all but one of his claims.  The Court will address the claims in order. Most of Scott's claims involve alleged ineffectiveness of counsel.  To establish ineffective assistance of counsel, a defendant must show: (1) his counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance resulted in prejudice to the defendant.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984).

<u>CLAIMS 1, 3-8, 15 & 19</u>:     <u>Ineffective Assistance of Trial Counsel</u>

Scott asserts that Metnick provided ineffective assistance in many different ways.  Scott, however, already asserted Metnick's ineffectiveness on direct appeal and lost.  That determination is now the law of the case. He, therefore, cannot proceed with these claims now.  <u>Fuller v. United States</u>, 398 F.3d 644, 648 (7th Cir. 2005).

Scott argues that the law of the case doctrine does not apply because there was an intervening change in the law in the Supreme Court's decision in <u>Massaro v. United States</u>, 538 U.S. 500 (2003).  The Supreme Court held in <u>Massaro</u> that the issue of ineffective assistance of counsel in a habeas proceeding was not subject to the procedural default rules that apply to

other issues that could have been raised on direct appeal.  Id. at 504.  The Seventh Circuit had previously stated that an ineffective assistance claim was subject to the same procedural default rules as other claims.  See Guinan v. United States, 6 F.3d 468, 471 (7th Cir. 1993).  Scott argues that this constitutes a change in the law that should allow him to proceed with his ineffective assistance claim.

The Seventh Circuit has considered this argument and rejected it.  The decision in Massaro was not an intervening change in the law that creates an exception to the application of the law of the case doctrine.  Fuller, 398 F.3d at 648-49.  Scott's claims of ineffective assistance by Metnick at trial have already been decided and are barred by the law of the case doctrine.

Scott also argues that only part of his claims of ineffective assistance by Metnick are barred by the law of the case doctrine.  The Court disagrees. The law of the case doctrine bars relitigating issues that have been decided on the merits on appeal.  Fuller, 398 F.3d at 650.  As quoted above, Nash argued that all of Metnick's actions had the cumulative effect of rendering ineffective assistance to Scott.  Nash, therefore, put at issue on appeal all of Metnick's representation of Scott.  The Court of Appeals determined that Metnick was not ineffective.  Thus, all of Scott's claims of ineffectiveness by

Metnick have been resolved and cannot be raised here under the law of the case doctrine.

CLAIM 2:       Conflict of Interest with Trial Counsel

Scott argues that Metnick had a conflict of interest because Metnick's mother was going to have surgery and because Metnick told the Court that Scott was "playing games" with the Court during the colloquy regarding Scott's decision not to testify.[1]  To establish a conflict of interest, Scott must establish either that his attorney : (1) had a potential conflict and the potential conflict prejudiced his defense, or (2) had an actual conflict and the conflict prejudiced his attorney's performance.  Stoia v. United States, 22 F.3d 766, 770 (7th Cir. 1994).  Scott has no evidence under either prong. He has no evidence of either a potential or actual conflict.  Metnick's mother's surgery is not a conflict of interest.  Scott argues that Metnick shortened the defense to finish the trial before the surgery.  This is simply wrong.  The record indicates that she was scheduled to have surgery on April 13, 2000, while the trial was ongoing.  Metnick only asked that the argument be moved to Thursday, April 14, 2000, after the date of the

---

[1]The conflict of interest claim may also be barred by the law of the case doctrine, but since Nash did not refer to the alleged conflict in his brief, the Court will address this issue.

surgery.  Metnick's desire to move the argument does not demonstrate a conflict.

Metnick's comment during the colloquy on Scott's decision not to testify, to the effect that Scott was playing games with the Court, was made outside the presence of the jury and was a statement of the obvious.  The statement did not demonstrate a conflict of interest.  Scott further has no evidence that these situations affected either Metnick's performance or prejudiced Scott's defense.  This claim, thus, has no merit.

CLAIM 9:        Conflict of Interest with Sentencing Counsel

Scott complains about a conflict of interest with Grigsby because Grigsby prosecuted him previously in state proceedings.  Scott waived this conflict before the first trial.  Such waivers are valid and bar subsequent collateral attacks.  United States v. Adkins, 274 F.3d 444, 453 (7th Cir. 2001).  Scott has presented nothing to show that the waiver was invalid. This claim, thus, has no merit.

CLAIM 10:       Sentencing Counsel's Objections to Drug Quantities

Scott complains that Grigsby did not object properly to drug quantities for which he was held accountable.  He argues that the drug quantities found in the PSR were based on the testimony of co-conspirators

Cooper and Burnett; their statements were inconsistent, and their testimony was unreliable. Scott argues that Grigsby was ineffective for failing to attack these witnesses. He also says the conduct of his co-conspirators was not reasonably foreseeable and so Grigsby should have challenged the PSR's determination that he should be accountable for the drugs distributed during the conspiracy.

Scott's argument is not persuasive. The Court did not base the determination of drug quantities on Cooper and Burnett's testimony. The Court relied on other witnesses, including co-conspirators Molly Rahar, Billy Scott, and Shawn Jones, and on witness Billy Chance. <u>Scott</u>, 116 F.Supp.2d at 993. Thus, Scott suffered no prejudice from Grigsby's alleged failure to challenge the credibility of Cooper and Burnett. Also, Grigsby's decision not to challenge Scott's liability for the actions of his co-conspirators met the objective standard of reasonableness. The jury had already determined beyond a reasonable doubt that Scott was part of the conspiracy. Challenging Scott's responsibility for the actions of his co-conspirators would have bordered on the frivolous. Grigsby's decision not to do so met the objective standard of reasonableness.

<u>CLAIM 11</u>:      <u>Sentencing Counsel's Failure to Object to Criminal History</u>

Scott claims that Grigsby should have objected to the calculation of his criminal history because Scott now claims that he was not represented by counsel during some of the prior convictions for which he received criminal history points.  The PSR states that he was represented by counsel in all of these cases.  PSR, ¶¶ 42-48.  Scott has only presented the following conclusory statements in his Declaration to contradict the PSR:

>   11.   That Mr. Greg Grigsby - my sentencing attorney - was once a prosecutor in Christian County, Illinois.
>
>   12.   That I negotiated several plea bargains with Mr. Grigsby, when he was prosecutor.
>
>   13.   That on these charges that I negotiated a plea, I did not have legal representation.

Addendum to Petition, Exhibit L, Declaration of Robert Scott, ¶¶ 11-13.

Scott's conclusory statements provide no evidence that these pro se pleas affected the criminal history calculation in the PSR.  Scott does not identify any of these cases in which he claims he was not represented by counsel, so there is no evidence that his pro se pleas were included in his criminal history calculation.  He, further, does not identify the charges for which he negotiated these pleas so there is no evidence that he was constitutionally entitled to counsel in any of those cases.  Hence, Scott has

presented no evidence that either: (1) Grigsby failed to meet the objective standard of reasonableness by choosing not to raise this issue, or (2) that Scott suffered any prejudice by this decision.  The claim is without merit.

CLAIM 12:       Confrontation Issue on Appeal

Scott argues that his appellate counsel Nash was ineffective for not raising on appeal the claim that Scott's Sixth Amendment confrontation rights were violated when the Court admitted Jones' grand jury testimony. Nash raised this issue only in terms of Federal Rule of Evidence 804(b)(6). Scott, 284 F.3d at 762.  Scott has made no showing of ineffectiveness.  The Seventh Circuit affirmed this Court's determination that Scott wrongfully procured Jones' unavailability for purposes of Rule 804(b)(6).  Id. at 764. The Seventh Circuit further stated, "It is, of course, well-established that a defendant forfeits his Confrontation Clause rights by wrongfully procuring the unavailability of a witness."  Id. at 762.  This observation indicates that the Seventh Circuit would have also affirmed the conviction even if the Confrontation Clause theory had been raised.  Thus, Nash's decision to press only the Rule 804 theory met the objective standard of reasonableness and did not result in any prejudice to Scott.

Scott argues that the standard of review under the Confrontation

21

Clause would have been <u>de</u> <u>novo</u>.  He also argues that the Government's burden to show a forfeiture of rights under the Confrontation Clause is clear and convincing evidence, but the standard under Rule 804 is only a preponderance of the evidence.  The Court is not persuaded.  Scott is in error concerning the burden of proof.  The correct burden of proof is a preponderance standard.  <u>United States v. White</u>, 116 F.3d 903, 911 (D.C. Cir. 1997); <u>United States v. Houlihan</u>, 92 F.3d 1271, 1280 (1st Cir. 1996); <u>United States v. Mastrangelo</u>, 693 F.2d 269, 273 (2nd Cir. 1982); and <u>Steele v. Taylor</u>, 684 F.2d 1193, 1202-03 (6th Cir. 1982) (all applying preponderance standard); <u>but</u> <u>see</u>, <u>United States v. Thevis</u>, 665 F.2d 616, 631 (5th Cir. 1982) (applying a clear and convincing standard).  The Seventh Circuit determined that the evidence met the preponderance standard.  <u>Scott</u>, 284 F.3d at 764-65.  Scott has failed to show that he suffered prejudice by his appellate counsel's decision to appeal the admission of Jones' grand jury testimony only under Rule 804.[2]

---

[2]Even if the clear and convincing standard applied, Scott has presented no evidence to show any reasonable probability that the outcome would have changed. Scott argues that the Seventh Circuit indicated in its opinion that the evidence presented in the April 3, 2000, hearing would not have met the clear and convincing standard. This Court disagrees.  The Seventh Circuit said that the only evidence that had much force was the testimony of witness Billy Chance.  <u>Scott</u>, 284 F.3d at 763.  The Seventh Circuit, however, also said that Scott did not challenge the accuracy of Chance's testimony and those facts supported the inference that Scott wrongfully coerced Jones

CLAIM 13:      _Apprendi_ issue on appeal

Scott argues that appellate counsel was ineffective for not raising on appeal the claim that: (1) the jury only came back with a general verdict of guilty without deciding the type or quantity of drugs involved in the conspiracy; and (2) that such a general verdict was not harmless error under Apprendi.  Scott is incorrect.  Counsel raised the Apprendi issue and argued that the general verdict was reversible error.  Scott Appellate Brief at 12. There is no showing that appellate counsel's actions in this regard fell below the objective standard of reasonableness.

CLAIM 14:      Ineffective Assistance of Appellate Counsel for Raising on
               Direct Appeal the Issue of Ineffective Assistance of Trial
               Counsel

Scott argues that Nash was ineffective for raising on direct appeal the ineffective assistance of his trial counsel Metnick.  As discussed above, this decision has effectively precluded Scott from raising his claims of Metnick's alleged ineffective assistance at trial in this Petition.  Further, as quoted above, the Court of Appeals told Nash during the oral argument that this would be the result.  Nash, however, stated that he had explained the risks

---

not to testify.  Id. at 764.  The opinion does not indicate that the evidence presented would not meet a clear and convincing standard of proof.

23

to Scott, and Scott told him to go forward anyway.  If this is true, then there was no ineffective assistance; Nash was only following his client's instructions.  <u>See</u> <u>Jones v. Page</u>, 76 F.3d 831, 847 (7th Cir. 1996).  Scott states in his Declaration that Nash did not alert him to these risks.  If this is true, then Nash's performance may have fallen below the objective standard of reasonableness.  The Court believes that the most efficient way to resolve this issue is to hold an evidentiary hearing limited to this question.  If the Court finds that Nash alerted Scott to the risks, then the matter is resolved.  If the Court finds that Nash did not alert Scott to the risks, then the Court will consider whether his performance fell below the objective standard of reasonableness, and whether any prejudice resulted to Scott.

<u>CLAIM 16</u>:     <u>Sentencing Counsel Failure to Prepare</u>

Scott claims that Grigsby failed to obtain and familiarize himself with the discovery material and the trial transcripts prior to trial.  Scott has no evidence to support this assertion.  The claim, therefore, has no merit.

<u>CLAIM 17</u>:     <u>Sentencing Counsel's Failure to Object to Prejudicial Letter</u>

Scott argues that Grigsby was ineffective because he allowed the Court to consider at sentencing a prejudicial letter and failed to present supportive

letters from friends and members of the community.  Grigsby, however, objected to the prejudicial letter at the sentencing hearing, and the Court stated that the prejudicial letter would not be considered in determining Scott's sentence.  <u>Transcript of Proceedings at Sentencing Hearing on September 25, 2000 (criminal docket entry 272)</u> at 13-15.  Thus, Grigsby handled that matter properly.  Scott has failed to present evidence of the content of the alleged supportive letters and has failed to present any evidence that he was prejudiced because the Court did not consider such letters.  The claim, therefore, has no merit.

<u>CLAIM 18</u>:      <u>Alleged Missing Discovery Materials</u>

Scott believes that some discovery materials were not provided to his counsel.  He has no evidence to support this claim.  The claim has no merit.

<u>CLAIM 20</u>:      <u>Alleged Prosecutorial Misconduct</u>

Scott claims the Government engaged in prosecutorial misconduct.  Scott has presented no evidence to support this claim.  The claim has no merit.

<u>CLAIM 21</u>:      <u>References to Trial Record on Appeal</u>

Scott claims that Nash failed to refer to the trial record to support his arguments on appeal.  Scott presents no evidence to show how Nash's use

of the record on appeal created any possibility of prejudice to him.  The claim has no merit.

CLAIM 22:      Blakely/Booker Claim

Scott's Amended Petition (d/e 12) argues that the Court improperly found facts by a preponderance of the evidence that should have been proven to a jury beyond a reasonable doubt.  See United States v. Booker, 543 U.S. 220 (2005); Blakely v. Washington, 542 U.S. 296 (2004).  The rules announced in Blakely and Booker may not be used retroactively as a basis for collateral review at this time.  McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005); Morris v. United States, 333 F.Supp.2d 759, 772 (C.D. Ill. 2004).  Thus, this claim has no merit at this time.

THEREFORE, This Court directs that an evidentiary hearing be held for the limited purpose of addressing whether Scott's appellate counsel alerted Scott to the risks of proceeding on direct appeal with Scott's claims of ineffective assistance of trial counsel.  All other claims are dismissed.  The Court makes as part of the record in this case the following portions of the record of Scott's criminal case, Case No. 99-30043: Transcripts of Proceedings (criminal docket entries 139, 148-54, 211, 222, 264-72); the April 4, 2000, Order (criminal docket entry 207); and the Presentence

Investigation Report (criminal docket entry 243).  The Presentence Investigation Report is to remain under seal.  For purposes of determining a time for scheduling an evidentiary hearing, the Court directs Scott to advise the Court by August 10, 2006, whether he will be represented by retained counsel or whether he seeks appointment of counsel for the evidentiary hearing.  If he seeks appointed counsel, he is directed to file an affidavit on the enclosed form, by August 10, 2006.

IT IS THEREFORE SO ORDERED.

ENTER:  July 18, 2006.

FOR THE COURT:

s/ Jeanne E. Scott

JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE